UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LAWRENCE JORDAN,<br><br>Defendant. | Case No. 25-CR-110 (RDM) |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

Less than two months after his release for violating supervision related to a sex offense conviction, Mr. Jordan was arrested for pleasuring himself while watching women exercise in a workout class. At the time of his arrest, Mr. Jordan had a loaded firearm hidden under his knee brace. The instant offense is no aberration for Mr. Jordan. He has a lengthy history of offenses, including two prior convictions for unlawfully possessing a firearm. Despite prior periods of court-ordered supervision, probation, incarceration, and thirty-five previous arrests, Mr. Jordan continues to reoffend, possess firearms, and put the community in danger. Considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community. For the following reasons, Mr. Jordan should be detained pending trial.

**BACKGROUND**

*The Offense*

On November 16, 2023, MPD Officers Topaz Proctor and Don Marshall were called to the Station House Apartments at 702 2nd St SE for a disorderly conduct. Inside the apartment, Mr. Jordan was sleeping on the floor in the resident lounge. They escorted Mr. Jordan out of the apartments. The officers remained in the Station House Apartments for a brief period before returning to their cars.

As they returned to their cars, the officers were approached by W-1, who worked at Barre 3—a workout facility in the same building as the Station House Apartments. She indicated that there was an unwanted individual in Barre 3. The officers walked inside and saw that it was Mr. Jordan, who they escorted out.

About 40 minutes later, Officer Proctor and Officer Michael Lee were dispatched to Barre 3. W-1 reported that Mr. Joran had returned to the window outside the fitness center and was pleasuring himself while watching a workout class in session. Among other members of the class was a United States Senator, who also reported the incident to MPD. Mr. Jordan was gone by the time police arrived, but W-1 reported that it was the same individual as earlier.



One week later, on November 23, 2023 at 6:16 a.m., Officer Marshall and Officer Keven Douglass responded to Tony's Breakfast at 1387 H Street NE for a report of aggressive

panhandling. Officer Marshall recognized Mr. Jordan from the scene a week earlier. He called Officer Proctor to the scene, who also recognized Mr. Joran. He was placed under arrest for Lewd, Indecent, and Obscene Acts. He was searched and transported to the First District for Processing.

At the First District, the defendant was searched more thoroughly. He was wearing a bulky knee brace at the time he was arrested. At the station, he was searched by Officer John Briscoe, who located a firearm underneath the knee brace. *See* Ex. 1. Specifically, Officer Briscoe located a Smith & Wesson 9mm semi-automatic firearm, loaded with one round in the chamber and eight rounds in the magazine.



**ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any

other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).

In determining whether any condition or combinations of conditions will assure the safety of the community, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

### I. The Nature and Circumstances of this Offense Merits Detention.

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention.

Mr. Jordan was arrested for pleasuring himself in public while leering at a group of women exercising less than two months after his release from supervision violations on an underlying sex

offense case. At the time of his arrest, Mr. Jordan, who has previously been convicted of felon-in-possession, was concealing a loaded firearm underneath a knee brace.

While the offense charged is a possessory offense, this Court has warned against discounting the inherent danger associated with loaded firearms. "Illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community." *United States v. Blackson*, 2023 WL 1778194, at *7. This Court routinely finds that just one such gun poses a danger to the community, *see United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public), especially a firearm loaded with a round in the chameber. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling.").

The nature and circumstances of Mr. Jordan's offenses weighs heavily in favor of detention.

## II.    The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[1] The Government's case against Mr. Jordan is overwhelming.

As shown in Government's Exhibit 1, body-worn camera footage shows Officer Briscoe remove the firearm from Mr. Jordan's person at the First District Station. Moreover, at Mr.

---

[1] This factor should be equally weighed. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194 at *8. Instead, "the weight of the evidence against [a]

Jordan's presentment in D.C. Superior Court, Mr. Jordan admitted to possessing a firearm, despite warnings from the judge that he had the right to remain silent. Ex. 2.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194 at *10. This is such a case, and Mr. Jordan should be detained pretrial.

### III. The Defendant's History and Characteristics Merit Detention.

The third factor, Mr. Jordan's history and characteristics, likewise favors detention.

Mr. Jordan has a long history, which includes thirty-five arrests, convictions for violent crimes, two prior convictions for felon-in-possession, and repeated failures under supervision.

Mr. Jordan's first conviction under 18 U.S.C. § 922(g) was in this court in case number 04-CR-40. He was sentenced by Judge Sullivan to 37 months incarceration followed by three years supervised release. Less than a year into his supervised release, on December 20, 2006, Judge Sullivan revoked his supervised release and resentenced Mr. Jordan to an additional 90 days.

Less than six months later, Mr. Jordan was arrested for Second Degree Assault in Prince Georges County, Maryland. Mr. Jordan was convicted of that charge and sentenced to 18 months imprisonment on June 24, 2009.

---

defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

On December 16, 2008, Mr. Jordan was charged in the Eastern District of Virginia with yet another violation of 18 U.S.C. § 922(g). He was sentenced to 8 years incarceration in that case, followed by three years of supervised release.[2]

Mr. Jordan was released from prison and began his term of supervised release on June 23, 2017. Less than two months later and still while on supervised release, Mr. Jordan was arrested in 2017-CF1-013534. In that case, Mr. Jordan was convicted of Third-Degree Sex Abuse after a guilty plea. The agreed-to proffer of facts is attached as Exhibit 4. According to that document, Mr. Jordan followed the victim into her apartment and told her that he wanted to take a shower with her. When the victim refused, a struggle ensued, and Mr. Jordan and the victim fell onto a living room table. Mr. Jordan then placed his forearm around the victim's neck and dragged her into the bedroom. Mr. Jordan pushed the victim on the bed and started trying to remove her clothing. A noise from the apartment door distracted Mr. Jordan and the victim was able to flee her apartment. For these actions, Mr. Jordan was sentenced to two years incarceration followed by five years of supervised release. Additionally, Mr. Jordan's supervision in the Eastern District of Virginia was revoked, and he was resentenced to 18 months incarceration.

When he was released from that term of incarceration, Mr. Jordan began supervised release on the D.C. Superior Court case. In short order, Mr. Jordan again failed on supervised release and was revoked on August 12, 2022. He was released from custody on October 3, 2023—less than two months from when he was arrested for lewd acts and found to be in possession of a firearm.

Mr. Jordan's lengthy and consistent criminal history indicates that he is a danger to the community, is unlikely to abide by court-ordered conditions of release. In fact, Mr. Jordan

---

[2] This conviction was not included in the Pretrial Services Report. Undersigned counsel provided information about the offense to the defense and pretrial services officer. Additionally, I have attached the docket and judgment as Exhibit 3.

7

repeatedly possesses firearms and commits violent and/or sexual offenses while on supervision. There is no evidence from Mr. Jordan's past that any level of supervision short of pretrial detention could keep the community safe.

As such, this factor weighs in favor of pretrial detention.

## IV.     Mr. Jordan Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by Mr. Jordan's release, similarly weighs in favor of detention.

Despite being given multiple opportunities to comply with supervised release after release from custody in his prior cases, the defendant continues to reoffend. Increasingly lengthy terms of imprisonment for firearms offenses have done nothing to deter him from obtaining and possessing a loaded weapon. A sex offense conviction did little to stop him from engaging in lewd and indecent behavior in public. At every point, the defendant has shown the court that he is not amenable to supervision and cannot be trusted to follow conditions from courts. The defendant's dangerousness cannot be overstated, and he should be detained pending trial.

## CONCLUSION

Mr. Jordan has repeatedly shown that he is unwilling to comply with court orders and the terms of supervision while in the community, instead committing further crimes while on release. Despite being two prior convictions under 18 U.S.C. § 922(g), Mr. Jordan continues to possess firearms. Each of the four factors the Court is required to consider indicate convincingly that there is no reason to believe that any condition or combination of conditions of release that would reasonably assure the safety of the community. The Government respectfully requests that the Court issue an Order granting its motion that Mr. Jordan be held without bond pending trial.

Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY
D.C. Bar No. 481866

By: _____
Joshua A. Gold
TX Bar No. 24103101
Rebecca G. Ross
N.Y. Bar No. 5590666
Assistant United States Attorney
U.S. Attorney's Office
601 D St NW
Washington, D.C. 20530
Office: 202-815-8965
Joshua.Gold@usdoj.gov