**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LAWRENCE JORDAN,<br><br>*Defendant*. | Criminal Action No. 25-110 (RDM) |

**MEMORANDUM OPINION AND ORDER**

Defendant Lawrence Jordan appeals Magistrate Judge Upadhyaya's April 25, 2025, pretrial detention order. *See* Min. Entry (Apr. 25, 2025). Jordan was arrested on November 23, 2023, and was originally charged in D.C. Superior Court. Shortly before his Superior Court trial was set to commence, however, the government obtained an indictment from the federal grand jury, Dkt. 1, and proceedings commenced before this Court. The federal indictment charges Jordan with unlawful possession of a firearm and ammunition by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

On April 25, 2025, Magistrate Judge Upadhyaya granted the government's motion to detain Jordan pending trial. Min. Entry (Apr. 25, 2025). Jordan, who has now been detained for approximately 18 months, appeals Magistrate Judge Upadhyaya's order. Dkt. 9 at 1. After Jordan appealed the detention order to this Court, the parties appeared for a status conference, and defense counsel indicated that she planned to file a motion to suppress the firearm evidence. Hrg. Tr. (Rough at 9). Because the Court must consider the weight of the evidence against the defendant in deciding whether pretrial detention is warranted, and because the possible

suppression of the key evidence against Jordan would necessarily affect that assessment, *see United States v. Taylor*, 289 F. Supp. 3d 55, 64–66 (D.D.C. 2018), the Court set an expeditious briefing schedule on the motion to suppress. Min. Entry (Apr. 30, 2025). Jordan, in turn, promptly filed his motion to suppress, Dkt. 10; the government responded with a combined opposition to the motion to suppress and to Jordan's appeal of the detention order, Dkt. 12; and Jordan filed a combined reply, Dkt. 13. Jordan's appeal of Magistrate Judge Upadhyaya's detention decision is now ripe for decision.

For the reasons set forth below, the Court will deny Jordan's appeal of the detention order, Dkt. 9, and will reserve judgment on his motion to suppress, Dkt. 10, until after the hearing scheduled on that motion.

## I. LEGAL STANDARD

Under the Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, if a judicial officer finds after conducting a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e)(1). Here, although the government makes passing reference to the risk of flight, it focuses almost exclusively on the risk that, it says, Jordan poses to the safety of the community. Dkt. 6. The Court will, accordingly, focus on the second prong of the detention standard.

To determine whether conditions exist that will reasonably assure the safety of the community, the Court must weigh the Section 3142(g) factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). The

government may proceed by way of proffer, *see United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996), but bears the burden of proving "by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community,'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f))

"[A]lthough the D.C. Circuit has not yet addressed the issue, the many circuits that have agree that the district judge should review *de novo* a detention decision rendered by a Magistrate Judge." *United States v. Hunt*, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017) (collecting cases). "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014) (quoting *United States v. Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C. 2013)). This Court will conduct its own, independent analysis of the relevant evidence presented by the parties.

## II.  ANALYSIS

The Court begins with the first factor, which focuses on the nature and circumstances of the offense charged. Here, Jordan is charged with a single count of violating 18 U.S.C. § 922(g)(1). The government stresses that Jordan was "arrested for pleasuring himself in public while leering at a group of women exercising less than two months after his release from supervision violations on an underlying sex offense case" and that the firearm at issue was discovered incident to a later arrest for that offense. Dkt. 6 at 4–5. At the time of his arrest, moreover, Jordan had a prior felon-in-possession conviction. *Id.* at 5. Jordan, in turn, responds that "the government entered a *nolle prosequi* as to the . . . indecent exposure charge" and that

"there was never any allegation that he was armed at the time of that alleged indecent exposure." Dkt. 9 at 1.

For present purposes, the Court places no weight on the indecent exposure charge, which, as the defense notes, was dropped. But the Court nonetheless concludes that the firearms charge at issue here is a serious one. The government offers no evidence, to be sure, that Jordan brandished or used the firearm at issue or that he has previously shot or threatened anyone with a firearm. As discussed further below, however, he has been convicted of third-degree sex abuse and of second-degree assault on two occasions.

The Court concludes that the first factor tips at least modestly in favor of detention. The nature of the offense would not, standing alone, warrant detention; that is, pretrial detention is not warranted in every Section 922(g) case. But the Court must consider the charged offense in light of all of the circumstances, and, here, this is not Jordan's first felon-in-possession case, the firearm was loaded and accessible, and Jordan has a history of both violent criminal conduct and failing to abide by court-ordered conditions of release. Although this history bares on at last two other Section 3142(g) factors— the history and characteristics of the defendant and the nature and seriousness of the danger to the community that would be posed by the defendant's release—consideration of the relevant factors often overlaps, and the factors need not, and should not, be considered in isolation. The Court is therefore persuaded that the nature and circumstances of the crime that Jordan is charged with having committed raises significant concerns about community safety. *See United States v. Blackson*, 23-cr-25, 2023 WL 1778194, at *7 (D.D.C. Feb. 6, 2023) (collecting cases concluding that unlawful possession of a loaded firearm is dangerous to the public).

4

The second factor—the weight of evidence against Jordan—is disputed. At the April 30, 2025 status conference, defense counsel argued that the government is unlikely to prevail because the key evidence—the firearm—was the product of an unlawful arrest. Hrg. Tr. (Rough at 9). As further explained in Jordan's suppression motion, Jordan was arrested for allegedly committing a misdemeanor—"Lewd, Indecent, or Obscene Acts" in violation of D.C. Code § 22-1312—about a week prior to his arrest. Dkt. 10 at 1. According to Jordan, the officers lacked probable cause to execute a warrantless arrest because this alleged misdemeanor offense was not committed in the arresting officers' presence. *Id.* at 3. Jordan argues that the warrantless arrest violated his rights under D.C. Code § 23-581 and under emerging Fourth Amendment jurisprudence, *see*, *e.g.*, *Gonzalez v. United States*, 145 S. Ct. 529, 530–33 (2025) (Sotomayor, J.) (statement on denial of cert.). The government opposes Jordan's suppression motion, arguing that Jordan misreads the D.C. statute and places too much weight on a dissent from the denial of a writ of certiorari, which itself "acknowledges that every circuit to consider the issue has held that the Fourth Amendment does not include an in-the-presence requirement for warrantless misdemeanor arrests." Dkt. 12 at 6 (citing *Gonzalez*, 145 S. Ct. at 532).

Although the arguments presented in Jordan's suppression motion are not insubstantial, the Court is not yet persuaded that he is entitled to prevail on that motion. A motions hearing is scheduled for June 17, 2025, and the Court will hear further from the parties at that time. As the record now stands, however, the Court merely notes (1) that, unless the Court grants the suppression motion, the evidence against Jordan is overwhelming, and (2) that it is, at best, uncertain whether Jordan will prevail on his suppression motion. As a result, the Court will treat this factor as tipping slightly in favor of pretrial detention. If the Court does grant the

5

suppression motion, however, Jordan would be free to seek reconsideration of the Court's pretrial detention order. *See Taylor*, 289 F. Supp. 3d at 64–66.

The third factor—the Defendant's history and characteristics—weighs heavily in favor of pretrial detention. The government represents that Jordan's criminal history includes "thirty-five arrests, convictions for violent crimes, two prior convictions for felon-in-possession, and repeated failures under supervision." Dkt 6 at 6. Jordan does not dispute this criminal record, agreeing that his criminal history consists of "two prior 922(g) offenses (one of which occurred in 2004), a third-degree sex abuse offense, a second[-]degree assault, and [other] offenses that occurred more than 20 years ago." Dkt. 9 at 5. Although several of Jordan's offenses occurred many years ago, his third-degree sex abuse conviction occurred in 2017 while he was on supervised release (which was, subsequently, revoked). Dkt. 6 at 7. Jordan's lengthy criminal history is concerning, especially given his repeated firearm and assault offenses, which bear heavily on the Court's conclusion that he poses a danger to the community.

Jordan responds that he has "received a small inheritance," which he argues will "enable him to start a stable life." Dkt. 9 at 5. Hopefully that is correct. But the existing record suggests that he is unable to comply with the terms of court-ordered supervision, that he has continued to possess firearms after serving prison time for doing so, and that he has engaged in violent criminal acts. The Court, accordingly, concludes that the third factor weighs heavily in favor of pretrial detention.

The fourth factor, the danger to the community, requires the government to identify an "articulable threat posed by the defendant." *Munchel*, 991 F.3d at 1283. The inquiry is necessarily "factbound" and "depends on the nature of the threat identified and the resources and capabilities of the defendant." *Id.* (citation omitted); *see also id.* (concluding that "[w]hether the

defendant poses a threat of dealing drugs, for instance, may depend on the defendant's past experience dealing, and her means of continuing to do so in the future" (citations omitted)). The Court concludes that the government has shown that Jordan poses an articulable threat to the community. He has on multiple occasions reoffended while on supervised release, including for firearm offenses. His prior, lengthy history of offending poses a substantial risk that he will reoffend while on pretrial release.

* * *

Jordan argues that pretrial detention is nonetheless unwarranted because he has now been held for approximately 18 months and, even if he is convicted of violating Section 922(g), he is unlikely to receive a sentence that (with good-time credit) would exceed that period. According to Jordan, the length of his pretrial detention to date supports two conclusions: first, it would be unjust to hold him pretrial for a period of time longer than he is likely to face if convicted, and, second, he is unlikely to commit any new offense while on pretrial release, since doing so would likely transform what might have been a time-served sentence into a much longer sentence. Although the Court is troubled by the length of Jordan's pretrial detention on a straightforward Section 922(g) charge, neither of Jordan's arguments is persuasive—at least for present purposes.

To start, although Jordan's appeal to fairness is understandable, it is unmoored to the standard that Congress enacted in Section 3142(f). The question for the Court is whether, if released, Jordan would pose a risk to the safety of the community—and not whether the length of his pretrial detention is fair. This Court, moreover, was not privy to the proceedings in Superior Court and cannot speak to whether those proceedings could have—and should have—moved

more expeditiously. If the case was unduly delayed, the proper recourse was to seek relief from the Superior Court.

To be sure, the transfer of the case to this Court has potentially delayed matters, and it is far from evident why that transfer was necessary. But the decision about where to charge a defendant is not for this Court to make. Again, the proper recourse is for Jordan to seek a very prompt trial date before this Court, and the Court will, if asked, grant that request. Finally, although Jordan's argument is premised on the likely sentence he would receive if convicted before this Court, that is a question that the Court cannot—and should not—address in the abstract.

Nor is the Court persuaded that the length of Jordan's pretrial detention diminishes the risk that he will reoffend while on pretrial release. To be sure, as a matter of common sense, Jordan would have every reason to abide by the Court's conditions while on supervised release and to comply fully with D.C. and federal law. But the same might be said of the circumstances preceding Jordan's prior violations of the terms of his supervised release or of his prior decision to possess a firearm after being convicted of a felony. To date, Jordan has apparently failed to conform his conduct to the dictates of common sense, leaving the Court with little reason to believe that the current circumstances are different.

Considering the four Section 3142(g) factors together, the Court is persuaded that Magistrate Judge Upadhyaya correctly found that no condition or combination of conditions will reasonably assure the safety of any other person and the community and that, accordingly, Jordan should be held pending trial. The parties are directed to confer with the Deputy Clerk and to file a joint status report with the Court on or before May 28, 2025, proposing the earliest possible trial date.

## CONCLUSION

For the foregoing reasons, Jordan's appeal of the Magistrate Judge's detention order, Dkt. 9, is hereby **DENIED** and the detention order is affirmed. The Court reserves decision on Jordan's motion to suppress, Dkt. 10, pending the hearing on that motion.

   **SO ORDERED**.

                              /s/ Randolph D. Moss
                              RANDOLPH D. MOSS
                              United States District Judge

Date:  May 23, 2025